IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DORENZO T. MOORE,** <br> **M42635,** <br><br>                 **Plaintiff,** <br><br> vs. <br><br> **CHAD SENNINGS,** <br> **LOY WILLIAMS,** <br> **DR. PHIL MARTIN,** <br> **LANCE ELLINGTON,** <br> **WEXFORD,** <br> **IDOC,** <br> **ROBINSON CORR. CTR.,** <br><br>                 **Defendants.** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Case No. 24-cv-177-RJD <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

# MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Dorenzo T. Moore, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Robinson Correctional Center (Robinson), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Plaintiff presents claims about ongoing health issues including severe flank pain, blood in his urine, chronic back pain, nerve pain, and lumps on his neck and testicles.

Plaintiff's Complaint (Doc. 1) is now before the Court[1] for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint in light of his consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between the Illinois Department of Corrections and Wexford and this Court.

money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

On February 23, 2023, Plaintiff was transferred from Dixon Correctional Center to Robinson. (Doc. 1 at 6). At the time of his transfer, he had a pending referral to an offsite medical provider to assess abdomen, pelvis, and flank pain, as well as blood in his urine. He alleges the pain was so severe he could not walk. Upon arrival at Robinson, he began to grieve his need for care, and he spoke to Defendants Phil Martin (healthcare unit administrator) and Loy Williams (warden) several times about his need for follow-up on the care that was supposed to occur at Dixon, but nothing was done.

Plaintiff also began to have problems getting the ibuprofen 800mg that was prescribed for his back pain, and medical soap for his skin problems. (Doc. 1 at 7). Without these items, Plaintiff suffers chronic pain, as well as rashes, and sores. (Doc. 1 at 8). Plaintiff's attached exhibits, which include grievance documentation and sick call slips, demonstrate that he repeatedly inquired about his ibuprofen and soap, and that without them he notified officials he was in pain and had skin rashes, sores, and bumps all over his body. (Doc. 1 at 24-25, 36-39). In one of the grievances, he alleged that Defendant Martin told him that he would not get any more soap or pain medication because "Wexford stopped giving it out." (Doc. 1 at 25).

On September 26, 2023, Plaintiff saw a nurse for lumps he had discovered on the left side of his neck and his genitals. (Doc. 1 at 7). Nothing was done after the first exam, so Plaintiff requested a second exam that took place on October 17, 2023. Eventually, Plaintiff received a CT scan and ultrasound of his testicle at an outside hospital on November 16, 2023. However, Plaintiff

alleges that as of the date of filing his complaint (January 24, 2024), he had yet to learn the results of the CT and ultrasound. He alleges that he was told by Defendants Martin and Sennings (a warden) that Robinson had been without a doctor or nurse practitioner for at least three months.

As a result of these events, Plaintiff alleges that he is in constant fear because he does not know if he might have a blood clot or cancer. The fear takes a mental and physical toll. He has chest pain and nerve pain. He adds that before Dr. Becker resigned, he told her several times about his chest and nerve pain, but nothing was done. (Doc. 1 at 8). Plaintiff indicates that he would also like to bring his claims against Miramony Rayburn, H. Gurley, and Lance Ellington because they all responded to grievances about his issues. (Doc. 1 at 9).

Plaintiff seeks compensatory damages. The complaint is accompanied by approximately 30 pages of grievance documents, excerpts of medical policies from Robinson and sick call slips. (Doc. 1 at 13-42). A grievance about Plaintiff's neck/testicle issues was filed on January 1, 2024, and he appealed the outcome to the administrative review board on January 25, 2024. (Doc. 1 at 30-32).

Based on the allegations in the Complaint, the Court will designate the following claims:

**Claim 1:** **Eighth Amendment deliberate indifference claim against Defendants Williams and Martin for their role in denying or delaying Plaintiff care for his flank/pelvis/abdomen pain and blood in his urine;**

**Claim 2:** **Eighth Amendment deliberate indifference claim against Defendants Williams and Martin for their role in denying or delaying Plaintiff his needed pain medication and soap;**

**Claim 3:** **Eighth Amendment deliberate indifference claim against Defendants Sennings and Martin for their role in delaying or denying Plaintiff follow-up care for his neck/testicle lump.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint

but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### PRELIMINARY DISMISSALS

In the case caption, Plaintiff named Wexford Health Sources, Inc., as a defendant, but his direct allegations against Wexford are limited. First, he alleges that Wexford has failed to follow the Robinson policies and its own policies for the provision of care. (Doc. 1 at 6). He claims he is not being seen on sick call in a timely fashion, and he is required to attend sick call multiple times to see a doctor, which delays care overall. Second, he attached one grievance wherein he claims that Defendant Martin told him he would not get ibuprofen or special soap because Wexford "stopped" offering it. (Doc. 1 at 25). These allegations are insufficient to state a claim against Wexford.

Wexford is a private corporation that cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014); *see also Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Thus, under *Monell*, for Plaintiff to recover from Wexford, he must show that the alleged constitutional violation was caused by: (1) an express policy that caused a constitutional deprivation when enforced; (2) a widespread practice that was so permanent and well-settled that it constituted a custom or practice; or (3) a person with final policymaking authority. *Dean v. Wexford Health Sources, Inc*., 18 F.4th 214, 235 (7th Cir. 2021).

Plaintiff does not have any allegations that suggest a constitutionally deficient policy, custom, or practice by Wexford, so he has not stated a *Monell* claim. He claims that he should be seen on sick call within 24 hours (per a Warden's Bulletin that he attached (Doc. 1 at 16-17)), but he is not seen for 2-3 weeks. Even if Wexford is responsible for violating this "policy" of the Warden, the policy itself does not appear faulty, and the violation of an internal policy or even a state statute is not sufficient to make out a constitutional claim. Plaintiff also generically alleges that "they" require him to come to sick call 3 times before he sees a doctor (Doc. 1 at 6), but this aspect is not addressed by the bulletin he submitted (Doc. 1 at 16-17), and he does not clearly attribute it to an express policy or anything more than his personal experience with individual employees. Wexford cannot be held responsible via *respondeat superior* liability for potential misdeeds of individual employees, so these allegations are insufficient to proceed under *Monell*. *See e.g., Shields v. Illinois Dept. of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) (a private corporation cannot be held liable under § 1983 unless the constitutional violation was caused by the corporation itself, and not simply by acts of its employees). Finally, to the extent Plaintiff was informed that Wexford stopped providing special soap, this bare allegation is not enough to demonstrate a plausible policy or practice claim against Wexford. Defendant Wexford will be dismissed without prejudice because Plaintiff has not pled an adequate claim against the entity.

Plaintiff also names the IDOC and Robinson in association with his allegations that medical care policies and protocols are not being followed. (Doc. 1 at 6). He cannot succeed on such a claim because neither the State, IDOC (an agency of the State), nor the physical prison, is a "person" subject to suit under § 1983. *See e.g., Thomas v. Illinois*, 697 F.3d 612, 613-14 (7th Cir. 2012) (the state and state agencies are not suable "persons" within the meaning of § 1983).

Finally, Plaintiff has named Lance Ellington, a counselor or grievance officer, in association with the claims presented in his complaint. He does not personally mention Ellington in the factual allegations, other than to state in closing that Ellington and three others, all responded to his grievances. This allegation standing alone is not enough to make out a claim against Ellington because the mere processing of grievances, without any involvement in the underlying issues, is insufficient to state a claim. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Therefore, Plaintiff has failed to state a sufficient claim against Defendant Ellington.[2]

## ANALYSIS

To state a claim for deliberate indifference to a serious medical need, an inmate must show that (1) he suffered from an objectively serious medical condition; and (2) the defendant was deliberately indifferent to a risk of serious harm from that condition. *Rasho v. Elyea*, 856 F.3d 469, 475-76 (7th Cir. 2017). "Every claim by a prisoner that he has not received adequate medical treatment is not a violation of the Eighth Amendment." *Petties v. Carter*, 836 F.3d 722, 727 (7th Cir. 2016). To determine if a medical professional acted with deliberate indifference, courts look to the provider's subjective state of mind. *Id.* at 728. An inmate need not show that a doctor explicitly intended harm or believed it would occur, but he must show more than negligence, medical malpractice, or even objective recklessness. *Id.*

For non-medical prison officials, such as administrators, an inmate may establish a claim of deliberate indifference if he can demonstrate that an official recklessly turned a blind eye to his serious medical need, or otherwise failed to exercise their authority to investigate and remedy the

---

[2] Plaintiff also mentioned at the end of his complaint that he would like to pursue the same claim against Miramony Rayburn and H. Gurley, two additional individuals who processed grievances. (Doc. 1 at 9). Plaintiff did not, however, properly name these two in the master caption as defendants. Fed. R. Civ. P. 10(a) (The title of the complaint must name all the parties). Regardless, the claims against them would fail for the same reason as the claim against Ellington.

situation. *See e.g., Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). However, if an administrator does investigate and is informed by medical professionals that care is ongoing, then they may reasonably rely on the judgment of medical professionals. *See e.g., Hayes v. Snyder*, 546 F.3d 516, 527-28 (7th Cir. 2008) (administrators who promptly responded to an inmate's correspondence about deficient care, investigated, and then relied on the judgment of treating providers, were not deliberately indifferent).

Plaintiff's allegations against Defendants Martin, Sennings, and Williams all rely on actions they took in their roles as prison administrators, not treating providers. With Claims 1 and 2, he alleges that he spoke to Martin and Williams on multiple occasions, and he communicated with them via written correspondence or grievances. The evidence he has submitted with his complaint supports a plausible inference that these defendants may have been on notice of inexplicably delayed care or receipt of his medications and soap and yet took little or no action to speed things along. The same evidence could also plausibly support a finding that each time these individuals learned about Plaintiff's needs, they investigated and felt that the course of things was appropriate. Giving Plaintiff the favorable inferences that he is due at this juncture, he may proceed on his Eighth Amendment claims concerning his conditions outlined in Claims 1 and 2 against Defendants Williams and Martin.

By contrast, Claim 3 is differently situated because the course of care for the neck/testicle lumps was actively unfolding at the time that Plaintiff filed his complaint. Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), an inmate must exhaust available administrative remedies before initiating a lawsuit. A sue first, exhaust later approach is not acceptable. *Chambers v. Sood*, 956 F.3d 979 (7th Cir. 2020). Although it is generally appropriate to wait for a defendant to raise an affirmative defense, the Seventh Circuit has noted that "when

the existence of a valid affirmative defense is so plain from the face of the complaint that the suit can be regarded as frivolous, the district judge need not wait for an answer before dismissing the suit." *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002). Plaintiff's exhibits unequivocally demonstrate that on the exact same day he filed this lawsuit (January 25, 2024), he also appealed his grievance about follow-up care for his testicle/neck problems to the Administrative Review Board. (Doc. 1 at 32). This means that at the time this lawsuit was filed, Claim 3 was not yet fully exhausted.

Claim 3 will be dismissed without prejudice, because it was not properly exhausted at the time this case was filed. This does not preclude Plaintiff from pursuing this claim in a later case, but he should wait to do so until he has completed the exhaustion process.

### MOTION FOR RECRUITMENT OF COUNSEL

Plaintiff's Motion for Recruitment of Counsel (Doc. 2) is **DENIED** at this time without prejudice. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). In determining whether to recruit counsel, the Court considers two factors— whether Plaintiff has made reasonable attempts to recruit his own counsel; and whether he is competent to represent his own interests. *See Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). Plaintiff alleges that attempted to contact lawyers on his own behalf, but he did not provide proof of his efforts. (Doc. 2 at 1). In further support of his request for counsel, he indicated that he cannot speak, write, or read English very well, but he did not elaborate. (Doc. 2 at 2).

Although Plaintiff may prefer the assistance of counsel, particularly if he faces a language barrier, this case is still in the earliest stages of the litigation, and the complaint was clear and easy to understand. In the next phases of this litigation, Plaintiff will only be required to exchange basic

information with the opposing parties, and these actions will be guided by the Court's orders. The Court does not find that Plaintiff will be unable to complete these basic tasks on his own. *See Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); *Santiago v. Walls*, 599 F.3d 749, 761 (7th Cir. 2010); *Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel...cannot be gauged."). No one has been served in this case, and a discovery schedule has not been entered. Although the motion is denied at this juncture, Plaintiff may renew his request for counsel if necessary, later in the litigation.

## DISPOSITION

**IT IS HEREBY ORDERED THAT Claims 1 and 2** of the Complaint (Doc. 1) survive initial screening as described above against Defendants Loy Williams, and Dr. Phil Martin. **Claim 3** is dismissed without prejudice because it is not properly exhausted, and this was the only claim against Defendant Sennings, so he is dismissed from this action. The Clerk of Court is **DIRECTED** to **TERMINATE** Defendant Chad Sennings. Additionally, Plaintiff has failed to state sufficient claims against Defendants Ellington, Wexford, IDOC, and Robinson Correctional Center. The Clerk of Court is **DIRECTED to TERMINATE** Defendants Ellington, Wexford, IDOC, and Robinson Correctional Center because Plaintiff has failed to state a claim against these parties.

The Clerk of Court is **DIRECTED** to prepare for Loy Williams, and Dr. Phil Martin: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons

(Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 14 days after a transfer or other change of address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute. FED. R. CIV. P. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Plaintiff's Motion for Recruitment of Counsel (Doc. 2) is **DENIED** as explained above.

Plaintiff paid $402 towards the filing fee, but in December of 2023 the civil filling fee increased from $402 to $405 dollars. (Doc. 6). Plaintiff is **ORDERED** to pay the additional $3.00 within 30 days.

**IT IS SO ORDERED.**

Dated: March 28, 2024

*s/ Reona J. Daly*
**Reona J. Daly**
**United States Magistrate Judge**

## NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear. As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.